**Michael GRIFFIN and Lake County, a political subdivision of the State of Indiana, Petitioners,**

v.

**DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Respondent.**

No. 49T10–0009–TA–98.

Tax Court of Indiana.

Sept. 9, 2003.

---

Gerald M. Bishop, John S. Dull, Merrill-ville, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

In August of 2000, the Petitioner, Michael Griffin, filed an original tax appeal in which he charged that Indiana's Hospital Care for the Indigent Tax (HCI tax) violated Article 10, § 1 of the Indiana Constitution, Article 1, § 23 of the Indiana Constitution, and the Fourteenth Amendment to the United States Constitution. This Court subsequently issued an opinion on Griffin's appeal, holding that the HCI tax violated Article 10, § 1 of the Indiana Constitution because it resulted in the non-uniform and unequal taxation of substantially similar property throughout the state. *Griffin v. Dep't of Local Gov't Fin.*, 765 N.E.2d 716 (Ind. Tax Ct.2002) (*Griffin I*). As a result, the Court did not address Griffin's other constitutional challenges. *See id.* at 718 n. 2.

On March 5, 2003, the Indiana Supreme Court reversed this Court's holding in *Griffin I. Dep't of Local Gov't Fin. v. Griffin,* 784 N.E.2d 448 (Ind.2003) (*Griffin II*). Consequently, the case now returns to this Court to resolve the remaining constitutional issues initially raised by Griffin:

I. Does the HCI tax violate Article 1, § 23 of the Indiana Constitution?

II. Does the HCI tax violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

III. Does the HCI tax violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

## ANALYSIS AND OPINION

### Standard of Review

■ Both Griffin and the Department of Local Government Finance (Department) have filed motions for summary judgment on the remaining constitutional issues. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). *See also W.H. Paige & Co. v. State Bd. of Tax Comm'rs,* 732 N.E.2d 269, 270 (Ind. Tax Ct.2000). Cross motions for summary judgment do not alter this standard. *W.H. Paige,* 732 N.E.2d at 270.

### Discussion

#### *Background*

In *Griffin II,* our Supreme Court described the HCI program:

Before 1986, each of Indiana's counties bore all responsibility for indigent health care. The legislature enacted the HCI provisions in 1986 and then recodified them in 1992 at Ind[iana]Code §§ 12–16–2–1 to 12–16–16–3. The general purpose was to provide cost-free emergency medical care to indigent patients who did not qualify for Medicaid. The HCI program transferred the administration of indigent health care to the State and imposed an HCI tax levy to finance it.

Under the present arrangement, the Department [ ] review[s] each county's property tax levy ... and ... enforce[s its] requirements[.] Each county annually imposes the levy as a property tax for that county and collects it like other state and county *ad valorem* property

taxes. Unlike the general property tax levy, the Indiana Code prescribes the amount of the HCI levy for each county; it is the previous year's levy increased by the percentage of growth in assessed value of all property in the state. Certain statutory limits on property tax rates may be exceeded [to] meet the requirements of the county hospital care for the indigent fund.

[A]n HCI fund [is established] in each county. The balance of each county's HCI fund is transferred to the state HCI fund. The State administers the HCI program and reimburses providers of emergency medical care to the indigent for their expenses from the state HCI fund. In 1993, the legislature modified the HCI program to secure additional federal Medicaid funds by using $35 million of the state HCI fund as matching money.

The initial HCI levy for each county had been set at the average of its indigent hospital care expenditures over 1984–86, with certain adjustments. The HCI tax rate thus varies from county to county because of the difference in the counties' historical expenditures on hospital services for the indigent during the years immediately before the HCI program was enacted.

*Griffin II*, 784 N.E.2d at 451–52 (internal citation, quotation, and footnotes omitted).

It was against this backdrop that Griffin asserted the HCI tax violated Article 10, § 1 of the Indiana Constitution. More specifically, he argued that because the HCI tax rates varied from county to county, as opposed to one tax rate applied uniformly and equally across the state,[1] the HCI tax violated Indiana's constitutional guarantee that all property within the state be assessed and taxed at a uniform and equal rate. *See* IND. CONST. art. 10, § 1(a).

The Supreme Court, however, rejected Griffin's argument; it determined that Article 10, § 1 of the Indiana Constitution requires that the same HCI tax rate shall apply alike to all *in any given taxing district*, whatever that taxing district may be (i.e., the state, a county, a township, or a municipality). *Griffin II*, 784 N.E.2d at 452–53 (emphasis added). The Supreme Court also explained that despite the fact that the HCI tax is a "combined effort[ ] of [the] state, local, and federal government[ ] to advance the welfare of [Indiana's] indigent[,]" *id.* at 455, there was no "constitutional evil in … set[ting] the rate of local contribution so that it varies in harmony with expenses for indigent health care in the local area." *Id.* at 456. Consequently, the Supreme Court implicitly acknowledged the legislature's classification of taxpayers on a county-by-county basis. *See id.* (stating that "the General Assembly [complied with the requirements of Article 10, § 1 when it] decided that, for purposes of financing indigent health care, the counties were not similarly situated and varied the tax burden accordingly[ ]"). Furthermore, because all taxpayers within each county are subject to the same HCI tax rate, the Supreme Court held there was no Article 10, § 1 violation. *See id.* at 459.

### Griffin's Remaining Constitutional Claims

█ The Court now turns to Griffin's remaining constitutional claims. The Court notes, however, that its standard of review for alleged violations of the Indiana Constitution is well established: the stat-

---

1. At the crux of Griffin's complaint is the fact that the HCI tax rate in Lake County, Indiana is the highest in the state. Accordingly, Griffin complains that as an owner of property in Lake County, he pays HCI tax at a higher rate than property owners in other counties.

utes providing for the HCI tax are presumed constitutional until Griffin, as the party challenging their constitutionality, clearly overcomes the presumption by a contrary showing. *See State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1037 (Ind.1998) (*St. John V*).

### I. Article 1, § 23 of the Indiana Constitution: The Privileges and Immunities Clause

■ Article 1, § 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. 1, § 23. According to Griffin, the HCI tax is unconstitutional under Section 23 because it arbitrarily "establish[es] a class of taxpayers (property owners in the County with the lowest ... HCI tax) and provid[es] them with a privilege not equally shared by members of the same class (taxpayers in those counties who ... pay a higher HCI tax)." (Pet'r Mem. In Support of [Its] Mot. for Partial Summ. J. at 20.)

■ Claims asserted under Article 1, § 23 are subject to the two-part test enunciated in *Collins v. Day,* 644 N.E.2d 72 (Ind.1994). First, the disparate treatment must be "reasonably related to inherent characteristics which distinguish the unequally treated classes." *Id.* at 78–79. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* at 80.

In applying this test, the Court must first determine whether HCI tax is reasonably related to the inherent characteristics that define, or distinguish, the classes. In this case, each class (i.e., county) is not defined by its HCI tax rate. Rather, each class is defined by its historical expenditures on indigent health care. As the

Indiana Supreme Court discussed within the context of Griffin's Article 10, § 1 claim, the HCI funding formula reflects the legislative determination that the local areas should contribute to the HCI fund in proportion to the HCI benefits they in turn receive. *See Griffin II,* 784 N.E.2d at 456. Lake County's HCI tax rate is the highest in the state for no other reason than it has "historically received much more HCI service than [ ] other counties." *Id.* at 458 n. 14. Thus, the distinction between counties is neither arbitrary nor unreasonable, but rationally related to the legislative goal of "matching burden with benefit." *Id.* at 457.

Turning to the second prong of the *Collins* test, this Court must ensure that the preferential treatment provided by HCI tax is uniformly applicable to all similarly situated persons. *See Collins,* 644 N.E.2d at 80. Griffin argues that the HCI tax is unconstitutional as applied: "although [ ] similarly situated to [ ]other taxpayers in, for example, Marion County, [Lake County taxpayers are] subjected to a substantially different tax burden—despite the fact that the funds collected [by all counties] are used for the same purpose[.]" Griffin's argument must again fail, for it ignores the fact that he, as a member of the Lake County class, is in a class separate from the other 91 classes of taxpayers throughout the state.

Furthermore, within his respective class, Griffin is treated no differently than any other taxpayer in Lake County—they all pay the HCI tax at the same rate. Likewise, a taxpayer in Allen County pays the HCI tax at the same rate as all other taxpayers in Allen County; a taxpayer in Marion County pays the HCI tax at the same rate as all other taxpayers in Marion County; a taxpayer in Wells County pays the HCI tax at the same rate as all other taxpayers in Wells County. Within each

respective county classification, each taxpayer is treated consistently. Consequently, it cannot be said that the HCI tax, *as applied,* violates Article 1, § 23 of the Indiana Constitution.

## II. The Equal Protection Clause: Griffin's Fourteenth Amendment Challenge

██ Griffin also claims that the HCI tax violates the Equal Protection Clause of the United States Constitution, which provides "[n]o state shall ... deny to any person within its jurisdiction the *equal* protection of the laws." U.S. CONST. amend. XIV, § 1 (emphasis added). The United States Supreme Court has explained that is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Griffin's "claim for equality" fares no better under Fourteenth Amendment analysis than it did under Article 1, § 23.

██ Under federal equal protection analysis, absent a showing that the challenged classification involves a suspect class or trammels on fundamental rights, the HCI tax is presumed valid and will be upheld so long as the classification is rationally related to a legitimate state interest. *See id.* at 440, 105 S.Ct. 3249. Consequently, the Equal Protection Clause "does not forbid classifications. It simply keeps governmental decision makers from treating differently persons, who in all relevant respects are alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

As the foregoing discussion shows, Griffin and his fellow Lake County taxpayers are not similarly situated to other taxpayers outside Lake County. The separate classification and treatment of taxpayers within each county for purposes of the HCI tax is rationally related to the legitimate policy that each county pay the HCI tax in proportion to its expenses for indigent medical care. Thus, in the absence of evidence that Griffin has been treated differently from other taxpayers *within* Lake County, this Court cannot find a violation of his federal equal protection guarantees.

## III. The Due Process Clause: Griffin's Second Fourteenth Amendment Challenge

██ In addition to providing "equal protection under law," the Fourteenth Amendment also guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Due process contains both procedural and substantive elements. "Procedural due process requires that taxpayers be provided with notice and a meaningful opportunity to be heard before a tax liability is finally fixed." *Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 388 (Ind. Tax Ct.1997) (*St. John III*). "Substantive due process requires that taxation not be arbitrary, oppressive, or unjust." *Id.*

Griffin alleges that the HCI tax violates substantive due process. Thus, in order to claim that the HCI tax interferes with his substantive due process rights, Griffin must be able to demonstrate either that 1) it infringes "fundamental rights [or] liberties which are, objectively, 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed,'" *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citations omitted); or 2) the HCI tax is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394, 47 S.Ct. 114, 71 L.Ed. 303

(1926). Griffin seeks to have his claim resolved on the "arbitrary and unreasonable" showing.

Generally, Griffin claims the HCI tax is arbitrary because the HCI tax funding formula is "fundamentally flawed"—in reality, it does not match a county's burden with its benefit because "there is no apparent or reasonable correlation between the percentage contribution of HCI tax paid by a [c]ounty, and the amount of HCI tax benefits that same [c]ounty received in return." (Pet'r Supp. Mem. In Support Of [Its] Mot. for Partial Summ. J. at 5.) Specifically, he claims the HCI funding formula is arbitrary for eight reasons: 1) the HCI tax changes annually without any reference to actual HCI claims or expenditures; 2) the HCI funding formula uses claims experience data from 1984–1986 as a basis for the assessment of HCI taxes ad infinitum; HCI taxes will continue to increase ad infinitum irrespective of need; 4) the HCI tax uses a formula which is dependent upon real estate as a component; 5) HCI tax proceeds are currently being used for a purpose contrary to the purpose of the funding formula; 6) the use of HCI funds for Medicaid matching funds imposes a disproportionate share of taxes upon [the counties] to pay the State's obligation; 7) the fixed base being used in the HCI formula (which was predicated upon emergency expenditures in a given county) has no rational relationship to how the State should raise $35 million dollars for Medicaid matching purposes; and 8) the annual growth quotient is based upon a "state-wide" average. (Pet'r Mem. In

Support of [Its] Mot. for Partial Summ. J. at 36–40.) [2]

■ "Arbitrary and unreasonable" has been interpreted to mean invidious or irrational. *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th Cir. 1988). This Court has stated that governmental action will be deemed irrational only if no sound reason may be hypothesized for the action whatsoever. *St. John III,* 690 N.E.2d at 391 (internal quotation and citation omitted). In other words, the government need not prove a sound reason to the Court's satisfaction in order to pass the rational basis test—it merely needs to hypothesize a sound reason. *Id.*

As the Supreme Court pointed out, despite Griffin's complaints about paying a higher HCI rate than others and about HCI funds being used to leverage Medicaid dollars, the net effect of the current HCI funding formula "has been to generate more money to aid the poor without provoking [ ] higher property tax[.]" *Griffin II,* 784 N.E.2d at 457. This reason, alone, is sufficient on its face to pass the "arbitrary and unreasonable" test of *Euclid.* Thus, in attempting to distribute the HCI burden amongst the counties in proportion to their historical expenditures for indigent health care, all the while generating up to another $45 million in federal matching funds to use for providing care to Indiana's poor, the Department acted in a rational manner. Consequently, Griffin's substantive due process claim fails.

## CONCLUSION

For the aforementioned reasons, this Court finds that the material facts in this

**2.** In subsequent briefing filed with the Court, Griffin states that he is not challenging the fact that the HCI funding formula is based upon extrapolated HCI data from 1984–86, but rather "whether ... the method of extrapolation of that data is constitutional; whether the results of that extrapolation are constitu-tional; whether or not it is constitutional [ ] to use historical HCI data to subsequently fund non-HCI Medicaid; and whether or not the continued use of that extrapolated data now results in the imposition of a tax which is unconstitutional[.]" (Pet'r Reply to [Resp't] Supp. Mem. at 11–12.)

case are undisputed and that, as a matter of law, the HCI tax does not violate Article 1, § 23 of Indiana Constitution, nor does it violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Therefore, this Court DENIES Griffin's motion for partial summary judgment and GRANTS the Department's cross motion for summary judgment.