Todd S. and Dawn E. COOMBES,
Petitioners,

v.

WASHINGTON TOWNSHIP ASSES-
SOR, Hamilton County Assessor, and
Hamilton County Property Tax As-
sessment Board of Appeals, Respon-
dents.

No. 49T10–0702–TA–7.

Tax Court of Indiana.

Feb. 27, 2009.

Jeffrey T. Bennett, Bradley D. Hasler, Bingham McHale LLP, Indianapolis, IN, Attorneys for Petitioners.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.

FISHER, J.

Todd S. and Dawn E. Coombes (the Petitioners) challenge the final determination of the Indiana Board of Tax Review (Indiana Board) valuing their real property as of the March 1, 2003 assessment date. The Petitioners present one issue on appeal, which the Court restates as: whether the Indiana Board erred when it failed to value the Petitioners' land at $42,000.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Sometime after the March 1, 2002 general reassessment, vacant rural land located just southeast of the intersection of 161st Street and Carey Road in Carmel, Indiana was platted and a new subdivi-

sion—the Bridgewater Club—was created. In January of 2003, the Petitioners purchased a 2.3 acre lot in Bridgewater for the contract price of $695,000.

For the March 1, 2003 assessment, the Washington Township Assessor assigned the Petitioners' lot an assessed value of $627,000.[1] The Petitioners subsequently filed an appeal with the Hamilton County Property Tax Assessment Board of Appeals (PTABOA), claiming that their assessment should be $150,000. The PTABOA affirmed the assessment. On February 26, 2004, the Petitioners filed an appeal with the Indiana Board, claiming that their assessment should be "no more than" $207,000.

On July 13, 2006, the Indiana Board conducted an administrative hearing on the Petitioners' appeal. During the hearing, the Petitioners made two entirely new arguments. First, they claimed that their lot should have been assessed at $42,000. The Petitioners based this claim on the theory that local assessing officials had violated their procedural due process rights when they had not properly amended the 2002 neighborhood land valuation form to include the values which were used to assess their lot (*see supra* note 1); as a result, the land's 2002 assessed value should have been reinstated. In the alternative, the Petitioners claimed that their lot should have been assessed at $513,663. (*See, e.g.,* Cert. Admin. R. at 223.) The Petitioners based this value on the theory that a 7.28% trending factor should have

been applied to their contract price of $695,000 to reflect the land's market value-in-use as of January 1, 1999.[2] (*See, e.g.,* Cert. Admin. R. at 496–97; 529 (footnote added).)

On January 10, 2007, the Indiana Board issued a final determination in which it held that the assessed value of the Petitioners' land should have been $598,000. More specifically, the Indiana Board agreed with the Petitioners in that the application of a trending factor to the $695,000 contract price was the best method to determine the land's January 1, 1999 market value-in-use; based on evidence provided by the local assessing officials during the administrative hearing, however, the Indiana Board determined that a 3.49% trending factor was more appropriate. (*See* Cert. Admin. R. at 66.)

On February 23, 2007, the Petitioners timely filed this original tax appeal. The Court heard the parties' oral arguments on December 15, 2008. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

When this Court reviews an Indiana Board final determination, it is limited to determining whether it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

---

1. In arriving at this value, the Washington Township Assessor valued the first acre at $600,000 and then applied a negative influence factor of 15%; the remaining land was valued at $90,000 per acre. (*See* Cert. Admin. R. at 21.)

2. All property assessments made between March 1, 2002 and March 1, 2005 were to reflect a property's market value-in-use as of January 1, 1999. *See* 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2, 4.

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West Supp.2008). The party seeking to overturn the Indiana Board's final determination bears the burden of demonstrating its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

### Discussion

■ " 'Procedural due process requires that taxpayers be provided with notice and a meaningful opportunity to be heard before a tax liability is finally fixed.' " *Griffin v. Dep't of Local Gov't Fin.*, 794 N.E.2d 1171, 1176 (Ind. Tax Ct.2003) (citation omitted), *review denied*. On appeal, the Petitioners argue that the Indiana Board's final determination is erroneous because it fails to recognize that in assessing their lot, local assessing officials have violated their procedural due process rights. (*See*

*generally* Pet'rs Br. at 8–9; Oral Argument Tr. at 5, 9–10.)

■ More specifically, the Petitioners explain that in 2002 (before Bridgewater was created and before their land was even their land) the applicable 2002 neighborhood valuation form provided that unplatted, vacant rural land located just southeast of the intersection of 161st Street and Carey Road in Carmel, Indiana was to be assessed at $35,000 for the first acre and $5,300 per acre beyond that.[3] (*See* Pet'rs Br. at 3–4 (footnote added).) (*See also* Cert. Admin. R. at 116, 216.) The Petitioners maintain that if local assessing officials believed some other value more accurately reflected the 2003 value of their lot specifically, and the lots in Bridgewater generally, they were required to amend the values set forth in the 2002 neighborhood valuation form. The Petitioners continue that in order to amend the form, local assessing officials were first required to give notice to taxpayers of those proposed values and an opportunity to be heard thereon. Because this was never done, the Petitioners contend that the Indiana Board erred when it failed to declare their assessment void and reinstate the land's 2002 assessed value of $42,000.[4] The Court, however, disagrees.

---

**3.** Indiana assesses real property on the basis of its "true tax value." "True tax value" is defined as "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." Manual at 2. *See also* IND.CODE ANN. § 6–1.1–31–6 (West 2003). In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value ... represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property." Manual at 2.

To assist assessing officials in determining the market value-in-use of land, the Department of Local Government Finance (the

DLGF) (through the now non-existent State Board of Tax Commissioners) has promulgated a series of guidelines for their use. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines) (incorporated by reference at 50 I.A.C. 2.3–1–2(c)), Book 1, Chapter 2. In essence, these guidelines call for the establishment of neighborhood valuation forms: forms that provide "base rates" for assessing officials to apply to the commercial, industrial, and residential land in each of the townships throughout the county. *See* Guidelines, Book 1, Chapter 2. *See also* IND.CODE ANN. § 6–1.1–4–13.6 (West 2002 & 2003) (explaining the base rate establishment process).

As the Indiana Board explained in its final determination, the 2002 neighborhood valuation form, *as duly-promulgated*, actually contained a "catch-all" provision under which Bridgewater generally—and the Petitioners' lot specifically—could be assessed in 2003. (Cert. Admin. R. at 62.) Indeed, that provision provided:

### FUTURE APPLICATION OF BASE RATES

To establish the base rate for *future* developments and/or omissions of any neighborhood not specifically identified in this Land Order, the assessing official shall follow one of the following procedures:

1. If market data is available, use the sales disclosures to establish a new land base rate. Sales should be time-adjusted to the lien date established for this land order, January 1, 1999. The factor used for time-adjustment in the estab-lishment of this Land Order is 5% per year (1.25% applied quarterly without compounding).

2. If no market data is available, identify a comparable neighborhood and apply the base rate indicated by this order to the area in question.

Most newly platted subdivisions in rural areas will need to be delineated as separate neighborhoods per the value shown by the available market data. In some instance these areas may remain within the rural neighborhood if the available market data substantiates a similar value.[5]

(Cert. Admin. R. at 93, 96 (emphasis and footnote added).) Thus, as the Indiana Board properly concluded, there was no need for local assessing officials to amend the applicable 2002 neighborhood valuation form. (Cert. Admin. R. at 62.) As a result, the Petitioners' procedural due process rights have not been violated.[6,7]

4. The Petitioners rely on two statutes, Indiana Code § 6–1.1–4–13.6 and Indiana Code § 6–1.1–4–30, to support their position. During the relevant time period, Indiana Code § 6–1.1–4–13.6 explained the procedure for creating the neighborhood valuation forms for use in a general reassessment. Specifically, township assessors would make a preliminary determination as to the market value-in-use of all land within the township, pursuant to the DLGF's guidelines. A.I.C. § 6–1.1–4–13.6(a). Those values were then submitted to the county property tax assessment board of appeals, which would in turn give notice of, and conduct a public hearing thereon. *Id.* Once the hearing was held and any necessary modifications were made, the township assessors were required to use those values when making assessments. *Id.* at (b),(c). Indiana Code § 6–1.1–4–30 provides that "[i]n making any assessment or reassessment of real property in the interim between general reassessments, the rules, regulations, and standards for assessment are the same as those used in the preceding general reassessment." IND.CODE ANN. § 6–1.1–4–30 (West 2003).

5. As the Hamilton County Assessor explained during the Indiana Board hearing, Hamilton County is the fastest growing county in Indiana, and in the top five percent of fastest growing counties in the nation; it adds an average of between 5,000 and 6,000 new parcels a year to its tax base. (Cert. Admin. R. at 592.) Consequently, local assessing officials believed the "catch-all" provision would be the most expeditious and efficient means to accomplish the assessment of new subdivisions as they were developed each year. (Cert. Admin. R. at 594–95.)

6. It appears that the Petitioners challenged the validity of this "catch-all" provision in their post-hearing brief filed with the Indiana Board. (*See* Cert. Admin. R. at 220 (merely stating that the provision is nothing more than an attempt by local assessing officials to "re-write statutes for their own convenience

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is AFFIRMED.

to accommodate the rate of new development in their county").) To the extent that the Petitioners have made no such argument in either their written or oral presentations to this Court, the Court will not make it for them.

7. In other words, when the 2002 neighborhood land valuation form was promulgated, Hamilton County taxpayers had notice of, and an opportunity to be heard on, the "catch-all" provision. Since then, the Petitioners have had several opportunities—both at the administrative level and before this Court—to demonstrate that the base rate that was applied to their lot in 2003 did not accurately reflect their property's market value-in-use. *See* 50 I.A.C. 2.3–1–1(d) (stating that assessments will be invalidated only when they do not accurately reflect a property's market value-in-use); Manual at 5 (stating that the Petitioners could have presented "sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles" to show that their assessed value was inaccurate). Procedural due process can require no more.