ATTORNEY FOR PETITIONER:
**ANDREW R. WOLF**
THE WOLF LAW OFFICE
Michigan City, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
**EVAN W. BARTEL**
**WINSTON LIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN



FILED
Jun 15 2017, 1:43 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

THERMO-CYCLER INDUSTRIES, INC., )
)
Petitioner, )
)
v. )    Cause No. 71T10-1110-TA-00062
)
INDIANA DEPARTMENT OF )
STATE REVENUE, )
)
Respondent. )

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**June 15, 2017**

WENTWORTH, J.

Thermo-Cycler Industries, Inc. has challenged the Indiana Department of State Revenue's final determination assessing it with unpaid Indiana sales and use tax liabilities for the 2008, 2009, and 2010 tax years (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment and presents just one issue for the Court to decide: whether the Department's assessments

are void as a matter of law because of the audit procedures it employed. Upon review, the Court finds that they are not.

## FACTS AND PROCEDURAL HISTORY

Thermo-Cycler, a manufacturer of heating equipment, is located in LaPorte County, Indiana. (Resp't Des'g Evid. Supp. Partial Mot. Summ. J. ("Resp't Des'g Evid."), Ex. 15 ¶¶ 1, 10.) In July of 2010, the Department notified Thermo-Cycler that in August it would be conducting a compliance audit for tax years 2007 through 2009 and indicated that it would need access to, among other things, Thermo-Cycler's federal income tax returns, sales reports showing total and exempt sales, and withholding tax forms. (Resp't Des'g Evid., Ex. A at Ex. 1.) At Thermo-Cycler's request, however, the audit start date was postponed several times. (See, e.g., Pet'r Des'g Evid., Ex. A at Exs. 2-7.) In the meantime, Thermo-Cycler did not provide the Department with access to any of the requested records. (See Pet'r Des'g Evid., Ex. A at Ex. 7.)

At the beginning of January 2011, the Department sent Thermo-Cycler a letter stating that it was necessary for the audit to be completed by the end of the month and warned that if the requested records were not forthcoming, it would complete the audit based on the "best information available." (Pet'r Des'g Evid., Ex. A at Ex. 7.) There was no further communication between Thermo-Cycler and the Department until April of 2011 when the Department issued both an audit summary and Proposed Assessments against Thermo-Cycler imposing approximately $70,000 in sales and use tax liabilities for the 2008, 2009, and 2010 tax years. (See Pet'r Des'g Evid., Ex. A at 71-72, Ex. B at Exs. 2-3; Resp't Confd'l Des'g Evid., Ex. B ¶ 7, Ex. E ¶ 5, Ex. 11.) The Department's

Proposed Assessments were based on figures it extrapolated from Thermo-Cycler's 2007-2009 federal tax returns. (See Pet'r Des'g Evid., Ex. B at 17.)

Thermo-Cycler subsequently protested the Proposed Assessments, claiming that they were void as a matter of law because the Department did not follow the statutorily-prescribed audit procedure. (See, e.g., Pet'r Des'g Evid., Ex. A at Ex. 8.) In the alternative, Thermo-Cycler claimed that the amount of the tax liabilities set forth in the Proposed Assessments were improper because they were based on certain erroneous mathematical calculations. (See, e.g., Pet'r Des'g Evid., Ex. A at Ex. 8.) After conducting a hearing on the protest, the Department issued a Letter of Findings in which it denied Thermo-Cycler's void as a matter of law argument, but granted that portion of Thermo-Cycler's protest relating to the propriety of the mathematical calculations subject to a supplemental audit. (See, e.g., Pet'r Des'g Evid., Ex. A at Ex. 8.) After the supplemental audit was completed, the Department issued revised Proposed Assessments that reduced Thermo-Cycler's total sales and use tax liabilities for the years at issue to approximately $62,000. (See Resp't Des'g Evid., Ex. D ¶¶ 4-5; Resp't Confd'l Des'g Evid., Exs. 10, 12.)

Thermo-Cycler filed an original tax appeal on October 19, 2011. In 2013, while the case was pending, the Department conducted a second supplemental audit of Thermo-Cycler and reduced the Proposed Assessments again, to approximately $16,000.[1] (See Resp't Des'g Evid., Ex. C ¶¶ 4-5; Resp't Confd'l Des'g Evid., Exs. 9,

---

[1] During this audit, Thermo-Cycler allowed the Department to examine its 2008 and 2009 records; Thermo-Cycler did not permit the Department to examine its 2010 records. (Resp't Des'g Evid. Supp. Partial Mot. Summ. J. ("Resp't Des'g Evid."), Ex. C ¶ 4.)

13.)   On July 19, 2016, Thermo-Cycler and the Department filed cross-motions for summary judgment.[2]   Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.   Ind. Trial Rule 56(C).   When reviewing a motion for summary judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party.   See Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1128-29 (Ind. Tax Ct. 1992).   Cross-motions for summary judgment do not alter this standard.   Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

## LAW

The Department is charged with the administration, collection, and enforcement of Indiana's sales and use taxes.   See IND. CODE § 6-8.1-1-1 (2011) (amended 2013); IND. CODE § 6-8.1-3-1(a) (2011).   Accordingly, the Department "may audit any returns filed in respect to [those] taxes . . . and may investigate any matters relating to [those] taxes."   IND. CODE § 6-8.1-3-12(a) (2011).

When conducting an audit, the Department may "inspect any books, records, or property of any taxpayer which is relevant to the determination of the taxpayer's tax liabilities[.]"   IND. CODE § 6-8.1-4-2(a)(3) (2011).   To that end, every person subject to the sales or use taxes "must keep books and records so the [D]epartment can

---

[2] The Department's motion for summary judgment was initially filed as a partial motion for summary judgment. (See, e.g., Resp't Mem. Supp. Mot. Partial Summ. J.) That partial motion, however, was subsequently converted to a cross-motion. (See Resp't Resp. Opp'n Pet'r Mot. Summ. J. at 5-6 n.1; Hr'g Tr. at 4, 32, 66-67.)

determine the amount, if any, of [his] liability for th[ose] tax[es] by reviewing those books and records." IND. CODE § 6-8.1-5-4(a) (2011). The taxpayer must allow inspection of his books, records, and returns by the Department at all reasonable times. I.C. § 6-8.1-5-4(c). When the taxpayer fails to maintain or provide the Department with his records, the Department may determine the taxpayer's tax liability based on the best information available to it. See I.C. § 6-8.1-5-4(a); IND. CODE § 6-8.1-5-1(b) (2011); Elmer v. Indiana Dep't of State Revenue, 42 N.E.3d 185, 194 n.12 (Ind. Tax Ct. 2015).

During the course of its audit, the Department "may[] (1) subpoena the production of evidence; (2) subpoena witnesses; and (3) question witnesses under oath." I.C. § 6-8.1-3-12(c). Ultimately, the Department

> may enforce its audit and investigatory powers by petitioning for a court order in any court of competent jurisdiction located in the county where the tax is due or in the county in which the evidence or witness is located. . . . The petition to the court must state the evidence or testimony subpoenaed and must allege that the subpoena was served but that the person did not comply with the terms of that subpoena.

I.C. § 6-8.1-3-12(d).

**ANALYSIS**

On appeal, Thermo-Cycler maintains that the Department's Proposed Assessments are void as a matter of law for three reasons. First, it contends that the Department was statutorily required, but failed, to get a subpoena and court order from the LaPorte County court before it could even complete its audit. Second, it argues that the Department was not authorized to conduct a best information audit because it had not formulated any reasonable belief that Thermo-Cycler had underreported its sales and use tax liabilities. Finally, Thermo-Cycler maintains that because it was never

5

notified prior to the issuance of the Proposed Assessments that tax year 2010 would be included, its right to due process under both the U.S. and Indiana Constitutions has been violated.

1.

Thermo-Cycler first asserts that when, in January 2011, the Department apparently believed Thermo-Cycler was "refusing to cooperate" because it had not yet provided the Department with access to its records, the Department was <u>required</u> under Indiana Code § 6-8.1-3-12(d) to obtain a subpoena and court order from the LaPorte County court before it could proceed any further with its audit. (<u>See</u> Pet'r Mem. Law Supp. Mot. Summ. J. ("Pet'r Br.") at 11, 13-16; Hr'g Tr. at 12, 15-16, 21-22.) Thermo-Cycler, however, misreads the language of Indiana Code § 6-8.1-3-12(d).

As previously indicated, when conducting an audit, the Department "<u>may</u>[] (1) subpoena the production of evidence; (2) subpoena witnesses; and (3) question witnesses under oath." I.C. § 6-8.1-3-12(c) (emphasis added). In turn, the Department <u>may</u> enforce those subpoena powers

> by petitioning for a court order in any court of competent jurisdiction located in the county where the tax is due or in the county in which the evidence or witness is located. . . . The petition to the court must state the evidence or testimony subpoenaed and must allege that the subpoena was served but that the person did not comply with the terms of that subpoena.

I.C. § 6-8.1-3-12(d). The use of the word "may" in these statutory provisions indicates that while the Department has the power to both issue and enforce a subpoena, it is not required to exercise either of those powers. <u>See, e.g.</u>, <u>Paul Heuring Motors, Inc. v. State Bd. of Tax Comm'rs</u>, 620 N.E.2d 39, 42 (Ind. Tax Court 1993) (stating that the words of a statute must be read in their plain, ordinary, and usual sense); WEBSTER'S

6

THIRD NEW INT'L DICTIONARY (2002 ed.) at 1396, 2085-86 (explaining that "may" is a discretionary term while "shall" is a mandatory one). Consequently, contrary to Thermo-Cycler's stated argument, the Department was not required under Indiana Code § 6-8.1-3-12(d) to obtain a subpoena and court order from the LaPorte County court before proceeding with its audit.[3]

2.

Next, Thermo-Cycler asserts that pursuant to Indiana Code § 6-8.1-5-1(b), the Department's power to conduct a best information audit can be exercised only <u>after</u> it has formulated a reasonable belief that a taxpayer has underreported its sales and use tax liabilities. (<u>See</u> Hr'g Tr. at 22-23.) Thermo-Cycler asserts that because the Department indicated in July of 2010 that it was conducting a compliance audit, it would not have had any reasonable belief at that time that Thermo-Cycler had underreported its sales and use tax liabilities. (<u>See</u> Pet'r Br. at 12 (maintaining that a compliance audit is just "a random audit" and is therefore "by [its] very definition [] content neutral" and "cannot encompass a 'reasonable belief'"); Pet'r Des'g Evid., Ex. D at 8-10, 15 (indicating that compliance audits are performed randomly from a pool of taxpayers).) Thus, Thermo-Cycler contends, the Department lacked any authority to then conduct a best information available audit and the resulting Proposed Assessments were void as a matter of law. (<u>See, e.g.,</u> Pet'r Br. at 11-12; Hr'g Tr. at 22-23.) Again, Thermo-Cycler

---

[3] Thermo-Cycler has also argued that before proceeding with its audit, the Department had, under its own regulations, a corresponding duty to report Thermo-Cycler's failure to cooperate to Indiana's Attorney General. (<u>See</u> Pet'r Mem. Law Supp. Mot. Summ. J. ("Pet'r Br.") at 13-16; Hr'g Tr. at 16-18 (citing 45 IND. ADMIN. CODE 15-3-5(c) (2011).) The Court will not address this argument because if the Department had such a duty, Thermo-Cycler admits that there is no designated evidence before the Court that demonstrates – one way or the other – whether the Department fulfilled that duty. (Hr'g Tr. at 17-18.)

has misconstrued the statute upon which it relies.

Indiana Code § 6-8.1-5-1(b) simply states that "[i]f the department reasonably believes that a person has not reported the proper amount of tax due, [it] shall make a proposed assessment of the amount of the unpaid tax on the basis of the best information available to [it]." I.C. § 6-8.1-5-1(b). Here, the Department issued its Proposed Assessments because the only information available to it – Thermo-Cycler's federal tax returns – lead it to reasonably believe that Thermo-Cycler underreported its sales and use tax liabilities. It was proper for the Department to rely on Thermo-Cycler's federal returns to complete its audit because Thermo-Cycler did not provide the Department with access to any of its books and records as required by statute. See Elmer, 42 N.E.3d at 194 n.12 (relying on I.C. §§ 6-8.1-5-1(b), -4(a)).

3.

Finally, Thermo-Cycler explains that the scope of the audit was initially established to encompass tax years 2007 through 2009 and in "all subsequent communications with the Department, the scope . . . was never expanded to include 2010, and records from 2010 were never requested." (Pet'r Br. at 16 (claiming that "[t]he first notice that Thermo-Cycler had that the Department had expanded the scope of its audit to include 2010 was when the summary audit and Proposed Assessment for . . . 2010 was received" in April 2011).) Thermo-Cycler therefore concludes that the Proposed Assessment for the 2010 tax year is void as a matter of law because it violates Thermo-Cycler's constitutional right to procedural due process. (See Pet'r Br. at 17-18 (stating that "Thermo-Cycler should have been afforded notification that 2010

8

was going to be part of the audit and given the opportunity to produce records from that year").)

A taxpayer's right to due process is guaranteed under the Fourteenth Amendment to the US Constitution and Article 1, § 12 of the Indiana Constitution. See U.S. CONST. amend. XIV, § 1 (declaring that no person shall be deprived "of life, liberty, or property, without due process of law"); IND. CONST. art. 1, § 12 ("every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law"). See also Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs, 653 N.E.2d 548, 553 (Ind. Tax Ct. 1995) (explaining that the extraction of a tax constitutes a deprivation of property); Haimbaugh Landscaping, Inc. v. Jegen, 653 N.E.2d 95, 104 (Ind. Ct. App. 1995) (explaining that federal and state due process guarantees are analogous), trans. denied. "'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" Clifft v. Indiana Dep't of State Revenue, 660 N.E.2d 310, 318 (Ind. 1995) (internal quotation marks and citation omitted). See also Griffin v. Dep't Local Gov't Fin., 794 N.E.2d 1171, 1176 (Ind. Tax Ct. 2003) ("'[p]rocedural due process requires that taxpayers be provided with notice and a meaningful opportunity to be heard before a tax liability is finally fixed'" (emphasis added)), review denied. Nonetheless, due process "is not 'a technical conception with a fixed content unrelated to time, place and circumstances,' but rather []

9

a principle which should be flexibly applied, depending on the particular situation."[4] Clifft, 660 N.E.2d at 318 (citation omitted).

The designated evidence before the Court indicates that Thermo-Cycler has not suffered any procedural due process violation with respect to the Department's 2010 Proposed Assessment. While Thermo-Cycler may not have known that 2010 "was on the table" before it received the Proposed Assessment for that year, it acknowledged that prior to suffering any deprivation of its property, it was given the opportunity to protest the 2010 Proposed Assessment and to present evidence contesting that Proposed Assessment at an administrative hearing. (See, e.g., Resp't Des'g Evid., Ex. 15 ¶¶ 3-9.) Since then, Thermo-Cycler has not only filed an appeal with this Court challenging the 2010 Proposed Assessment, but also received another opportunity to present the Department with evidence related thereto during the second supplemental audit. (See, e.g., Resp't Des'g Evid., Exs. C ¶ 4, 15.) Due process requires no more.

---

[4] Thermo-Cycler states in conclusory fashion that its right to due process is not only secured by the Fourteenth Amendment to the U.S. Constitution, but also by the Fourth Amendment and the equal privileges and immunities clause of the Indiana Constitution. (See Pet'r Br. at 17.) The Fourth Amendment protects US citizens against unreasonable searches and seizures; the equal privileges and immunities clause of the Indiana Constitution states that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." U.S. CONST. amend. IV; IND. CONST. art. 1, § 23. Thermo-Cycler has not provided the Court with any explanation as to how these provisions relate to or impact its due process claim, and the Court will not undertake to figure it out.

**CONCLUSION**

Based on the designated evidence and arguments before it, the Court GRANTS summary judgment in favor of the Department and AGAINST Thermo-Cycler.

SO ORDERED this 15th day of June 2017.

Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:

Andrew R. Wolf, Jessica R. Gastineau, Evan W. Bartel, Winston Lin